NO. COA13-964

NORTH CAROLINA COURT OF APPEALS

Filed: 4 March 2014

HORNER INTERNATIONAL COMPANY,
    Plaintiff,

v.                                   Wake County
                                       No. 13 CVS 7131

BILL M. MCKOY,
    Defendant.


Appeal by Plaintiff and cross-appeal by Defendant from preliminary injunction entered 14 June 2013 by Judge G. Bryan Collins in Wake County Superior Court. Heard in the Court of Appeals 8 January 2014.

> *Wallace & Nordan, L.L.P., by John R. Wallace and Joseph A. Newsome, for Plaintiff.*

> *Robinson Bradshaw & Hinson, P.A., by J. Dickson Phillips and Brian L. Church, for Defendant.*


STEPHENS, Judge.


*Procedural History and Factual Background*

This case concerns the grant in part and denial in part of a motion for a preliminary injunction in a dispute between a company and its former employee. Plaintiff Horner International Company manufactures flavor materials for use in tobacco and food products. Defendant Bill M. McKoy was employed by

Plaintiff from May 2006 until October 2012. In 2006, Defendant, who had worked in the food processing and flavor industry since the early 1980s, assisted Plaintiff with setting up a new manufacturing plant in Durham and served as plant manager thereafter. In May 2006, Defendant signed a Non-Competition Agreement ("NCA") and Agreement Not to Disclose Trade Secrets ("ANDTS") as conditions of his employment with Plaintiff. Defendant resigned from Plaintiff on 8 October 2012 and, thereafter, began employment with Teawolf, LLC, a Delaware Limited Liability Company with its principal place of business in New Jersey. Defendant's work for Teawolf involves installing, maintaining, and optimizing equipment used in the production of new flavor products. Both Plaintiff and Teawolf sell flavor materials derived from cocoa, chocolate, coffee, tea, fenugreek, ginseng, and chamomile.

On 20 May 2013, Plaintiff filed (1) a complaint; (2) a motion for temporary restraining order ("TRO"), preliminary injunction, and permanent injunction; and (3) a motion for an order allowing expedited discovery of Defendant. The motions for TRO and expedited discovery were allowed on 22 May 2013, and Defendant was restrained from violating the NCA and ANDTS. Following a hearing on the motion for preliminary injunction in

early June 2013, the trial court entered an order on 14 June 2013, *nunc pro tunc*, to 4 June 2013, which enjoined Defendant from disclosing Plaintiff's confidential information and trade secrets, but denied the motion as to the NCA. On 27 June 2013, Plaintiff filed notice of appeal from the trial court's denial of the preliminary injunction as to the NCA. On 8 July 2013, Defendant filed notice of cross-appeal from the grant of the preliminary injunction as to Plaintiff's confidential information and trade secrets.

*Grounds for Appellate Review*

Preliminary injunctions are "interlocutory and thus generally not immediately reviewable. An appeal may be proper, however, in cases, including those involving trade secrets and non-compete agreements, where the denial of the injunction deprives the appellant of a substantial right which he would lose absent review prior to final determination." *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 507, 606 S.E.2d 359, 361 (2004) (citations and internal quotation marks omitted).

> The purpose of a preliminary injunction is ordinarily to preserve the *status quo* pending trial on the merits. Its issuance is a matter of discretion to be exercised by the hearing judge after a careful balancing of the equities. Its impact is temporary and lasts no longer than the pendency of the action. Its decree bears no precedent to

> guide the final determination of the rights of the parties. In form, purpose, and effect, it is purely interlocutory. Thus, the threshold question presented by a purported appeal from an order granting a preliminary injunction is whether the appellant has been deprived of any substantial right which might be lost should the order escape appellate review before final judgment.

*A.E.P. Indus., Inc. v. McClure*, 308 N.C. 393, 400, 302 S.E.2d 754, 759 (1983) (citation and internal quotation marks omitted). Our Supreme Court went on to hold that

> where time is of the essence, the appellate process is not the procedural mechanism best suited for resolving the dispute. The parties would be better advised to seek a final determination on the merits at the earliest possible time. Nevertheless, [where a] case presents an important question affecting the respective rights of employers and employees who choose to execute agreements involving covenants not to compete, [appellate courts should] address the issues.

*Id.* at 401, 302 S.E.2d at 759. We believe the same reasoning applies to agreements between an employer and employee regarding protection of the employer's alleged trade secrets. Accordingly, we address the merits of both Plaintiff's appeal and Defendant's cross-appeal.

*Discussion*

In its appeal, Plaintiff argues that the trial court erred in denying its motion for a preliminary injunction as to the NCA, contending that (1) a non-compete agreement can be properly enforced by means of a preliminary injunction and (2) the NCA is valid and enforceable. In his cross-appeal, Defendant argues that the court erred in enjoining him from disclosure of Plaintiff's confidential information and trade secrets, contending that (1) Plaintiff failed to sufficiently identify the trade secrets allegedly at risk of disclosure, (2) Defendant's mere "opportunity to misappropriate" cannot support the court's determination of Plaintiff's likelihood of success on the merits of its claims, and (3) the preliminary injunction entered was too "broad and nebulous." As discussed herein, we affirm.

*I. Standard of Review*

> As a general rule, a preliminary injunction is an extraordinary measure taken by a court to preserve the *status quo* of the parties during litigation. It will be issued only (1) if a plaintiff is able to show likelihood of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation.

*Id.* at 401, 302 S.E.2d at 759-60 (citations, internal quotation marks, and emphasis omitted).

"The standard of review from a preliminary injunction is essentially *de novo*." *VisionAIR, Inc.*, 167 N.C. App. at 507, 606 S.E.2d at 362 (citation and internal quotation marks omitted). Thus, "on appeal from an order of a superior court granting or denying a preliminary injunction, an appellate court is not bound by the findings, but may review and weigh the evidence and find facts for itself." *A.E.P. Indus., Inc.*, 308 N.C. at 402, 302 S.E.2d at 760 (citation omitted). "Nevertheless[,] a trial court's ruling on a motion for a preliminary injunction is presumed to be correct, and the party challenging the ruling bears the burden of showing it was erroneous." *VisionAIR, Inc.*, 167 N.C. App. at 507, 606 S.E.2d at 362 (citation and internal quotation marks omitted).

*II. Plaintiff's Appeal*

Plaintiff argues that the trial court erred in denying its motion for a preliminary injunction as to the NCA, contending that (1) non-compete agreements *may* be properly enforced by means of a preliminary injunction and (2) the NCA is valid and enforceable. While Plaintiff's first contention is correct, we disagree with the second.

Plaintiff asserts that this Court should reverse the denial of its motion and remand for entry of a preliminary injunction as to the NCA, citing the following discussion from *A.E.P. Indus., Inc.*:

> [T]here are two important aspects of this case which distinguish it substantively and procedurally from the more usual case in which a preliminary injunction is sought. The first is that the ultimate relief [the] plaintiff seeks is *enforcement* of a covenant not to compete. The promised performance by the employee is forbearance to act and the remedy is one for specific performance of the contract in the nature of an injunction prohibiting any further violation of it.
>
> The second distinguishing feature of this case is that the decision made at the preliminary injunction stage of the proceedings becomes, in effect, a determination on the merits. This is so because the validity of the covenant depends, among other things, on the duration of the time limitation which, in order to be reasonable, must be brief. The case is clothed with immediacy. Frequently the time limitation will have expired prior to final determination. Moreover, because the primary relief sought by the plaintiff is a permanent injunction, many of the considerations involved in the decision to grant or deny the preliminary injunction parallel those involved in a final determination on the merits. Specifically, the court must decide whether the remedy sought by the plaintiff is the most appropriate for preserving and protecting its rights or whether there is an adequate remedy at law.

*A.E.P. Indus., Inc.*, 308 N.C. at 405-06, 302 S.E.2d at 762 (citations omitted; emphasis in original). Thus, our Supreme Court held:

> Because of the need for immediacy of appropriate relief in cases dealing with covenants not to compete, as for example in the present case where [the] defendant contracted not to engage in a competitive business for only eighteen months, the law as stated above is particularly applicable. We hold that where the primary ultimate remedy sought is an injunction; where the denial of a preliminary injunction would serve effectively to foreclose adequate relief to [the] plaintiff; where no "legal" (as opposed to equitable) remedy will suffice; and where the decision to grant or deny a preliminary injunction in effect results in a determination on the merits, [the] plaintiff has made a showing that the issuance of a preliminary injunction is necessary for the protection of its rights during the course of litigation.

*Id.* at 410, 302 S.E.2d at 764. Thus, valid non-compete agreements *can be* enforced by a preliminary injunction, and Defendant freely concedes this point. What is not discussed in *A.E.P. Indus., Inc.*, but forms the central question in this appeal, is the second prong of Plaintiff's appellate argument: whether the NCA is valid.

> Covenants not to compete between an employer and employee are not viewed favorably in modern law. To be valid, the restrictions on the employee's future employability by others must be no wider in scope than is

necessary to protect the business of the employer. If a non-compete covenant is too broad to be a reasonable protection to the employer's business it will not be enforced. The courts will not rewrite a contract if it is too broad but will simply not enforce it.

*VisionAIR, Inc.*, 167 N.C. App. at 508, 606 S.E.2d at 362 (citations and internal quotation marks omitted). In that case, this Court observed that the non-compete clause in question provided that the defendant

> may not "*own, manage, be employed by or otherwise participate in, directly or indirectly, any business similar to Employer's . . . within the Southeast*" for two years after the termination of his employ with VisionAIR. Under this covenant [the defendant] would not merely be prevented from engaging in work similar to that which he did for VisionAIR at VisionAIR competitors; [the defendant] would be prevented from doing even wholly unrelated work at any firm similar to VisionAIR. Further, by preventing [the defendant] from even "indirectly" owning any similar firm, [the defendant] may, for example, even be prohibited from holding interest in a mutual fund invested in part in a firm engaged in business similar to VisionAIR. Such vast restrictions on [the defendant] cannot be enforced.

*Id.* at 508-09, 606 S.E.2d at 362-63 (footnote omitted; emphasis added).

The NCA here is quite similar to the non-compete covenant in *VisionAIR, Inc.* The NCA purports to bar Defendant from

"directly or indirectly" being employed by or acting "as an advisor, consultant, or salesperson for, or *becom*[*ing*] *financially interested, directly or indirectly*, in any person, proprietorship, partnership, firm, or corporation engaged in, or about to become engaged in, the business of selling flavor materials" for a period of 18 months after his employment with Plaintiff ended. (Emphasis added).

We perceive no meaningful distinction between the NCA here and the non-compete covenant held to be overbroad in *VisionAIR, Inc.* The duration of time is slightly shorter (18 months here versus two years in *VisionAIR, Inc.*). However, the NCA contains no geographical limitation, unlike the restriction of the *VisionAIR, Inc.* covenant to similar businesses in "the Southeast." More importantly, just as, "[u]nder th[e] covenant [the defendant in VisionAIR] would not [have] merely be[en] prevented from engaging in work similar to that which he did for VisionAIR at VisionAIR competitors; [the defendant] would [have] be[en] prevented from doing even wholly unrelated work at any firm similar to VisionAIR[,]" the NCA purports to bar Defendant from doing wholly unrelated work for any firm that sells "flavor materials[,]" even if that firm's products do not compete with those of Plaintiff. Finally, the NCA purports to bar Defendant

from having even an indirect financial interest in such a business, a condition specifically rejected by the Court in *VisionAIR, Inc.* *See id.* at 509, 606 S.E.2d at 362-63 ("Further, by preventing [the defendant] from even 'indirectly' owning any similar firm, [the defendant] may, for example, even be prohibited from holding interest in a mutual fund invested in part in a firm engaged in business similar to VisionAIR. Such vast restrictions on [the defendant] cannot be enforced.").

Plaintiff further cites *Precision Walls, Inc. v. Servie*, 152 N.C. App. 630, 568 S.E.2d 267 (2002) and *Okuma Am. Corp. v. Bowers*, 181 N.C. App. 85, 638 S.E.2d 617 (2007) in support of its position. These cases are distinguishable.

In *Okuma Am. Corp.*, this Court observed:

> *When considering the time and geographic limits outlined in a covenant not to compete*, we look to six overlapping factors:
>
> (1) the area, or scope, of the restriction; (2) the area assigned to the employee; (3) the area where the employee actually worked or was subject to work; (4) the area in which the employer operated; (5) the nature of the business involved; and (6) the nature of the employee's duty and his knowledge of the employer's business operation.

*Id.* at 89, 638 S.E.2d at 620 (citation and internal quotation marks omitted; emphasis added). In *Precision Walls*, this Court considered only "the reasonableness of time and territory

restrictions" and a bar on employment with competitors. *Precision Walls, Inc.*, 152 N.C. App. at 637, 639, 568 S.E.2d at 272, 273. As noted *supra*, it is the broad sweep of the activities covered by the NCA which renders the agreement overbroad and thus unenforceable. Accordingly, these cases are largely inapposite. However, we do find it instructive that the Court in *Okuma Am. Corp.* noted that "a covenant not to compete is overly broad [when], rather than attempting to prevent [the former employee] from competing for []business, it requires [the former employee] to have no association whatsoever with any business that provides [similar] services . . . ." 181 N.C. App. at 91, 638 S.E.2d at 621 (citations and internal quotation marks omitted). We believe this is the situation presented by the NCA here.

In sum, because the NCA is overbroad and thus unenforceable, Plaintiff cannot demonstrate likely success on the merits. *See VisionAIR, Inc.*, 167 N.C. App. at 508, 606 S.E.2d at 362. We conclude that the trial court did not err in denying Plaintiff's motion for a preliminary injunction as to the NCA, and, accordingly, that portion of the order is affirmed.

*III. Defendant's Cross-Appeal*

In his cross-appeal, Defendant advances two bases for his argument that the trial court erred in granting the preliminary injunction as to confidential information and trade secrets obtained by Defendant during his employment with Plaintiff: that Plaintiff failed to show a likelihood of success on the merits of its claim for violations of the North Carolina Trade Secrets Protection Act ("TSPA") and that the trial court's injunction was too broad and nebulous.  We disagree.

A. *Specificity of allegations*

Defendant first contends that the trial court erred in concluding that Plaintiff showed a likelihood of success on the merits of its claim for violations of the TSPA because Plaintiff failed to plead the trade secrets at risk of disclosure with sufficient particularity and alleged only the *opportunity* to misappropriate the trade secrets.  We disagree with both contentions.

The TSPA

> provides that the owner of a trade secret shall have remedy by civil action for misappropriation of the secret.

> "Trade secret" means business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:

a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and

b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

"Misappropriation" means acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret. The TSPA also provides that actual or threatened misappropriation of a trade secret may be preliminarily enjoined during the pendency of the action and shall be permanently enjoined upon judgment finding misappropriation . . . .

*Washburn v. Yadkin Valley Bank & Trust Co.*, 190 N.C. App. 315, 326, 660 S.E.2d 577, 585 (2008) (citations and internal quotation marks omitted), *disc. review denied*, 363 N.C. 139, 674 S.E.2d 422 (2009).

To determine what information should be treated as a trade secret, a court should consider the following factors:

(1) the extent to which information is known outside the business;

(2) the extent to which it is known to employees and others involved in the business;

(3) the extent of measures taken to guard secrecy of the information;

(4) the value of information to the business and its competitors;

(5) the amount of effort or money expended in developing the information; and

(6) the ease or difficulty with which the information could properly be acquired or duplicated by others.

*Area Landscaping, L.L.C. v. Glaxo-Wellcome, Inc.*, 160 N.C. App. 520, 525, 586 S.E.2d 507, 511 (2003) (citations and internal quotation marks omitted). "[A] complaint that makes general allegations in sweeping and conclusory statements, without specifically identifying the trade secrets allegedly misappropriated, is insufficient to state a claim for misappropriation of trade secrets." *Washburn*, 190 N.C. App. at 327, 660 S.E.2d at 585-86 (citation and internal quotation marks omitted). Rather, to successfully plead misappropriation of trade secrets, "a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *VisionAIR, Inc.*, 167 N.C. App. at 510-11, 606 S.E.2d at 364 (citation and internal quotation marks omitted).

Regarding specificity of those trade secrets allegedly at risk, for example, allegations that an employee "acquired knowledge of [the employer's] business methods; clients, their specific requirements and needs; and other confidential information pertaining to [the employer's] business" are too "broad and vague" to allege a TSPA claim. *Washburn*, 190 N.C. App. at 327, 660 S.E.2d at 586.

Here, in contrast, the verified amendment to Plaintiff's complaint alleges with great detail and specificity the information Defendant has allegedly provided to his new employer, describing, *inter alia*, various raw materials and raw material treatments; extraction, filtration, separation, and distillation techniques; and methods for compounding of flavors, packaging, and plant utility. Further, the amendment alleged that these processes and methods were used in the production of flavor materials derived from seven specifically identified substances, such as cocoa, ginseng, and chamomile. Accordingly, we reject Defendant's assertions that Plaintiff failed to properly plead its claims under the TSPA.

Regarding allegations supporting the threat of misappropriation, Defendant contends that the trial court erred in granting the preliminary injunction because Plaintiff could

only show "opportunity" for misappropriation. As noted *supra*, the TSPA provides that "*actual or threatened misappropriation of a trade secret may be preliminarily enjoined* during the pendency of the action and shall be permanently enjoined upon judgment finding misappropriation . . . ." N.C. Gen. Stat. § 66-154(a) (2013) (emphasis added). Further,

> [m]isappropriation of a trade secret is *prima facie* established by the introduction of substantial evidence that the person against whom relief is sought both:
>
> (1) Knows or should have known of the trade secret; and
>
> (2) Has had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner.
>
> This *prima facie* evidence is rebutted by the introduction of substantial evidence that the person against whom relief is sought acquired the information comprising the trade secret by independent development, reverse engineering, or it was obtained from another person with a right to disclose the trade secret. This section shall not be construed to deprive the person against whom relief is sought of any other defenses provided under the law.

N.C. Gen. Stat. § 66-155 (2013) (italics added). Courts have upheld grants of a preliminary injunction where plaintiffs have presented some evidence that former employees have or

necessarily will use trade secrets. *Compare Barr-Mullin, Inc. v. Browning*, 108 N.C. App. 590, 597-98, 424 S.E.2d 226, 230-31 (1993) (finding a *prima facie* case for misappropriation existed which supported a preliminary injunction where the defendant helped develop software while working for the plaintiff and then began producing identical software after leaving the plaintiff's employment); *Analog Devices, Inc. v. Michalski*, 157 N.C. App. 462, 467, 579 S.E.2d 449, 453 (2003) (upholding denial of preliminary injunction where product design differences between the defendant's former and new employers "render[ed] the alleged trade secrets largely non-transferable").

Here, unlike in *Analog Devices, Inc.*, there are no product design differences which would render "non-transferable" the trade secrets of Plaintiff which Defendant possesses. Defendant's strenuous assertions on appeal that Plaintiff produced no direct or circumstantial evidence of his "acquisition, use, or disclosure of [Plaintiff's] information" is misplaced. The TSPA permits preliminary injunctions where a *prima facie* case for "actual or *threatened* misappropriation of a trade secret" is established. N.C. Gen. Stat. § 66-154(a) (emphasis added). In turn, that *prima facie* case is established by showing that a defendant "(1) [k]nows or should have known of

the trade secret; and (2) [*h*]*as had a specific opportunity to acquire it for disclosure or use* or has acquired, disclosed, or used it without the express or implied consent or authority of the owner." N.C. Gen. Stat. § 66-155 (emphasis added). Defendant's knowledge of trade secrets and opportunity to use those in his work for his new employer create a threat of misappropriation, and thus the trial court's grant of a preliminary injunction during the pendency of the action was proper.[1]

*B. Specificity of the preliminary injunction*

Defendant also argues that the court's injunction was too broad and nebulous, citing *Travenol Labs., Inc. v. Turner*, 30 N.C. App. 686, 228 S.E.2d 478 (1976).

In *Travenol Labs., Inc.*, the plaintiff-employer

> sought and the trial court . . . granted an injunction to prevent [the employee] from revealing "all information regarded as confidential . . . including but not limited to information concerning the mechanical modification of the Westphalia centrifuge . . ." and to prevent [the new employer] from receiving the same. Again [the Court] weigh[ed] the factors relevant to the

---

[1] Defendant also identifies two e-mails, the contents of which Defendant asserts were improperly proved by testimony. However, the court did not rely on the e-mails to support its conclusions of law. Accordingly, we need not consider the admissibility of this evidence.

likelihood of disclosure in determining the appropriateness of injunctive relief. Ordinarily, mere employment by a competitor alone will not create a likelihood of disclosure sufficient to support an injunction. An employee may take from his employment general knowledge and skills. [The plaintiff-employer] has clearly shown that it is probable that at trial it will establish that the mechanical modification of the Westphalia centrifuge is a trade secret. This modification has been the subject of research and development and would be of current use to [the new employer] in its production process. [The employee] has worked in the production field for 22 years. Since this is precisely the field in which [the employee] will be employed by [the new employer], not merely as a worker but at a high level supervisory position, the possibility of disclosure is high even absent any underhanded dealing in the circumstances of his termination of employment with [the plaintiff-employer].

[The plaintiff-employer] has also presented evidence showing that several competitors have tried without success to make a similar modification. The disclosure of this modification would cost [the plaintiff-employer] a competitive advantage worth many thousands of dollars. We f[ou]nd, therefore, that with respect to the modification of the Westphalia centrifuge, the trial court was correct in issuing a preliminary injunction in [the plaintiff-employer's] favor.

We [did] not agree, however, that [the plaintiff-employer] made an adequate showing to support that part of the injunction broadly prohibiting disclosure of "all information regarded as confidential." This

> provision presents problems of scope and nebulosity.
>
> The showing made with respect to the centrifuge modification rested upon its use in production, [the employee's] high level position in production, and the failure of competitors to make a similar modification. These factors have no bearing to the more broadly phrased part of the injunction . . . . *Sub judice*, [the plaintiff-employer] apparently considers its entire production process as secret and confidential. Yet it appears that [the plaintiff-employer, the new employer,] and other competing enterprises use the standard . . . process in their plasma fractionation operations. Though there may be some variation in the production process among the competing enterprises, [the plaintiff-employer] has failed to show unique processing, other than the modified Westphalia centrifuge, the disclosure of which would result in irreparable damage.

*Id.* at 694-95, 228 S.E.2d at 485 (citations omitted). This Court went on to "emphasize that the facts and circumstances of each case dictate the propriety of injunctive relief[.]" *Id.* at 695, 228 S.E.2d at 485.

Here, looking at the individual facts and circumstances of the matter, the enjoining of Defendant from "[u]sing, disclosing, or transmitting for any purpose any confidential information obtained by [Defendant] from [Plaintiff]" plainly applies to the methods, processes, and techniques described as trade secrets in the preliminary injunction's findings of fact

and conclusions of law.  As discussed *supra*, those trade secrets are described with sufficient specificity that Defendant will not be prevented from working with any "standard processes" with his new employer.  Accordingly, we overrule this argument.

The trial court's order is

AFFIRMED.

Judge DAVIS concurs.

Judge STEELMAN concurs in a separate opinion.

NO. COA13-964

NORTH CAROLINA COURT OF APPEALS

Filed: 4 March 2014

HORNER INTERNATIONAL COMPANY,
        Plaintiff,

        v.                              Wake County
                                        No. 10 CVS 7131

BILL M. McKOY,
        Defendant.


        STEELMAN, Judge, concurring.

        I fully concur with the legal reasoning and result set forth in the opinion, but write separately to again express concern over the state of our law of restrictive employment covenants in the context of our increasingly integrated global economy.

        At the time that our law in the area of restrictive employment covenants was developed, much of our commerce was local, and restrictive covenants were imposed only to protect specific local interests. Any covenants that attempted to protect broader commercial interests were held to be invalid as an improper restraint of trade. Today's economy is global in nature. In the instant case, plaintiff conducts a very specialized niche type of business, but its scope is worldwide, rather than being focused upon a few counties in North Carolina.

Our Supreme Court should re-evaluate the law of restrictive covenants in the context of changed economic conditions to allow restrictions upon competing business activities for a specific period of time, limited to a specific, narrow type of business, but with fewer geographic limitations.