Lunsford v. JBL Communications, LLC, 2020 NCBC 68.

STATE OF NORTH CAROLINA

BUNCOMBE COUNTY

J. BROOK LUNSFORD and
LUNSFORD GROUP, INC. f/k/a
JBL COMMUNICATIONS, INC.,

  Plaintiffs and
  Counterclaim Defendants,

  v.

VIAONE SERVICES, LLC and
DAVID DORWART,

  Defendants,

  and

JBL COMMUNICATIONS, LLC,

  Defendant and
  Counterclaim Plaintiff,

  v.

CAMERON GUNTER; CLIFFORD
CHURCHILL; FIBER OPTIC
SOLUTIONS LLC; PIMLICO, INC;
OSPREY COMMUNICATIONS,
LLC; CVO ENTERPRISES INC; and
RUSSELL BROWN,

  Counterclaim Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 3973


**ORDER AND OPINION ON OSPREY
COMMUNICATIONS, LLC'S MOTION
TO DISMISS COUNTERCLAIMS**

1. This action arises from the sale of a telecommunications construction company. The sellers are Lunsford Group, Inc. (which the parties call "Old JBL") and its only shareholder, J. Brook Lunsford. The buyer is JBL Communications, LLC (which the parties call "New JBL"). Each side accuses the other of foul play. Lunsford and Old JBL came to court first, claiming fraud and breach of contract. New JBL reciprocated by alleging, among other things, that Lunsford and Old JBL breached

restrictive covenants in the asset purchase agreement and related contracts. New JBL has asserted counterclaims against Lunsford and Old JBL as well as seven other individuals and entities who supposedly conspired with them.

2. One of the alleged conspirators, Osprey Communications, LLC ("Osprey"), now moves to dismiss all counterclaims against it under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. (ECF No. 75.) For the following reasons, the Court **DENIES** the motion.

> *Pearce Law PLLC, by Bradley E. Pearce, for Plaintiffs/Counterclaim Defendants J. Brook Lunsford and Lunsford Group, Inc.*
>
> *Parker Poe Adams & Bernstein LLP, by Michael G. Adams, Jami J. Farris, and Morgan H. Rogers, for Defendants ViaOne Services, LLC and David Dorwart, and for Defendant/Counterclaim Plaintiff JBL Communications, LLC.*
>
> *Law Offices of Jamie A. Stokes, PLLC, by Jamie A. Stokes, for Counterclaim Defendants Cameron Gunter, Clifford Churchill, Fiber Optic Solutions LLC, Pimlico, Inc., CVO Enterprises Inc., and Russell Brown.*
>
> *O'Hagan Meyer, PLLC, by Wood W. Lay and Aretina K. Samuel-Priestley, for Counterclaim Defendant Osprey Communications, LLC.*

Conrad, Judge.

## I.
## BACKGROUND

3. The Court does not make findings of fact on a motion to dismiss. The following background assumes that the allegations of the counterclaims are true.

4. For over twenty years, Old JBL provided engineering, design, construction, and maintenance services for fiber-optic telecommunications systems and networks.

(*See* Countercl. ¶¶ 14, 18, ECF No. 44.) Lunsford was the sole shareholder. (*See* Countercl. ¶ 15.)

5. In July 2018, Old JBL sold its assets to New JBL for nearly $7 million (plus or minus a few adjustments not relevant here). (*See* Countercl. ¶¶ 15, 16.) New JBL aimed to carry on the business and arranged to keep Lunsford, with his deep experience, involved after the sale. Lunsford became a minority member of New JBL, (*see* Countercl. ¶ 20), and he also entered into a consulting agreement. For a monthly fee, he agreed to manage customer relationships, help with company strategy, and use his industry relationships to make introductions to New JBL's management team. (*See* Countercl. ¶¶ 21, 23, 24.)

6. At the same time, New JBL sought assurances that Lunsford would not begin competing against it. The asset purchase agreement and the consulting agreement contain essentially identical covenants not to compete. They provide that, for a specified time and in a defined territory, Old JBL and Lunsford may not "directly or indirectly . . . engage, invest in, own, manage, operate, control or participate in the ownership, management, development, operation or control of, any business, trade or occupation which engages in the Business or any activities directly competitive with the Business." (Asset Purchase Agrmt. ["APA"] § 12.3(a), (a)(i), ECF No. 76.1; Consulting Agrmt. § 8(a), (a)(i), ECF No. 76.2.) The "Business" means "providing aerial and underground engineering, design, construction and maintenance services for telecommunications systems and networks"—in other words, the kind of work that Old JBL had done and New JBL intended to do. (APA Recital A; Consulting

Agrmt. § 8(b); *see also* Countercl. ¶ 14.)  There are also related covenants that prohibit solicitation of New JBL's customers and employees and interference with its customer relationships.  (*See* APA § 12.3(a)(ii)–(iii); Consulting Agrmt. § 8(a)(ii)–(iii).)

7.  According to New JBL, these were empty promises.  Lunsford and his affiliates have allegedly conspired to steal confidential documents, poach New JBL's employees, and interfere with its customer relationships.  (*See, e.g.*, Countercl. ¶¶ 30, 33, 34, 47, 50, 82–84, 129.)  One alleged conspirator and competitor is Osprey.  (*See* Countercl. ¶ 31.)  Osprey's president is Lunsford, and it shares office space with Old JBL and at least three related entities in a building owned by Lunsford.  (*See* Countercl. ¶¶ 39, 40, 60.)  Although formed in 2018, Osprey advertises its "many decades of fiber optic construction and management experience," passing off Old JBL's and New JBL's projects as its own.  (Countercl. ¶¶ 60, 61, 78.)  Its current project is a fiber-optic network running from northern Virginia to Tennessee.  (Countercl. ¶ 77.)

8.  New JBL also alleges that its qualifier, Clifford Churchill, left to join Lunsford and Osprey.  To be licensed as a general contractor, an entity must have a qualifier who is a licensed general contractor.  (*See* Countercl. ¶ 67.)  Churchill had been Old JBL's qualifier and agreed to stay on as New JBL's qualifier through November 2019.  (*See* Countercl. ¶¶ 68, 70.)  At Lunsford's request, Churchill withdrew his qualifier status early, leaving New JBL without one.  (*See* Countercl. ¶¶ 71, 72.)  Churchill now works for Osprey while also serving as qualifier for Fiber

Optic Solutions LLC, another counterclaim defendant and alleged conspirator. (*See* Countercl. ¶¶ 60, 73, 74.)

9. This case began in late 2019. Lunsford and Old JBL have asserted claims against New JBL and others for fraud and breach of contract. In response, New JBL asserted counterclaims against nine parties, including Lunsford, Old JBL, Osprey, and Churchill. New JBL claims not only breach of the restrictive covenants but also breach of Churchill's qualifier agreement, tortious interference with contract, intentional interference with prospective economic advantage, civil conspiracy, and unfair or deceptive trade practices.

10. Osprey has moved to dismiss all claims asserted against it. The motion to dismiss has been fully briefed, and the Court held a hearing on August 17, 2020, at which all parties were represented by counsel. The motion is ripe for decision.

II.
LEGAL STANDARD

11. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the [counterclaim] complaint." *Isenhour v. Hutto*, 350 N.C. 601, 604, 517 S.E.2d 121, 124 (1999) (citation and quotation marks omitted). The motion should be granted only when "(1) the complaint on its face reveals that no law supports the . . . claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the . . . claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615, 821 S.E.2d 729, 736–37 (2018) (citation and quotation marks omitted). In deciding the motion, the Court must treat well-pleaded allegations as true and view the facts and permissible inferences "in the

light most favorable to the non-moving party." *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332, 828 S.E.2d 467, 471 (2019) (citation and quotation marks omitted). The Court may consider documents "attached to and incorporated within" the counterclaim complaint but may not consider extrinsic matters. *Bucci v. Burns*, 2018 NCBC LEXIS 37, at *7–8 (N.C. Super. Ct. Apr. 25, 2018) (citation and quotation marks omitted).

## III.
## ANALYSIS

12. Most of the counterclaims against Osprey rest on a theory of conspiracy. Osprey could not have breached the asset purchase agreement or the consulting agreement, for example, because it was not a party to either. All the same, New JBL claims that Osprey is liable for breaches by Lunsford and Old JBL—and for other wrongs—because it conspired with them to compete unlawfully. *See Burton v. Dixon*, 259 N.C. 473, 476, 131 S.E.2d 27, 30 (1963) ("If a conspiracy is formed and an overt act, causing damage, is committed by any one or more of the conspirators in furtherance of the conspiracy, all of the conspirators are liable.").

13. Osprey takes aim at the whole lot. It argues, first, that New JBL's claims for relief are flawed. Without a valid underlying claim, it contends, there can be no actionable conspiracy. *See, e.g.*, *Harris v. Matthews*, 361 N.C. 265, 273 n.2, 643 S.E.2d 566, 571 n.2 (2007); *Brewster v. Powell Bail Bonding, Inc.*, 2020 NCBC LEXIS 27, at *15–16 (N.C. Super. Ct. Mar. 11, 2020). Assuming that some underlying claims are viable, Osprey also argues that New JBL hasn't adequately alleged any conspiracy.

14.    The Court will address these arguments in turn.

A.  Noncompete Covenants

15.    Osprey begins with the covenants not to compete.  It contends that the covenants are unenforceable and, as a result, that any claims based on them must be dismissed.  (*See* Br. in Supp. 5–10, ECF No. 76.)

16.    In the context of a sale of a business, a covenant not to compete is enforceable "(1) if it is reasonably necessary to protect the legitimate interest of the purchaser; (2) if it is reasonable with respect to both time and territory; and (3) if it does not interfere with the interest of the public."  *Beverage Sys. of the Carolinas, LLC v. Associated Beverage Repair, LLC*, 368 N.C. 693, 698, 784 S.E.2d 457, 461 (2016) (quoting *Jewel Box Stores Corp. v. Morrow*, 272 N.C. 659, 662–63, 158 S.E.2d 840, 843 (1968)).  Although a question of law, the reasonableness of a restrictive covenant depends on the individual circumstances of the case.  *See Jewel Box Stores*, 272 N.C. at 663, 158 S.E.2d at 843.

17.    For purposes of the motion, Osprey does not challenge the time and territory restrictions or assert that the covenants interfere with the public interest.  Instead, it argues that the covenants are broader than reasonably necessary to protect New JBL's interests for two reasons: first, because they operate without regard to whether the proscribed activity "actually competes" with New JBL, (Br. in Supp. 5); and second, because they restrict indirect ownership of companies in New JBL's line of business, (*see* Br. in Supp. 9–10).

18. The first argument is based on an unfair reading of the covenants. The cases cited by Osprey—all from the employment context—nullified language that would have barred an employee from working in a business "similar to" the employer's business. *E.g.*, *RLM Commc'ns, Inc. v. Tuschen*, 831 F.3d 190, 196–97 (4th Cir. 2016). Businesses in different fields are sometimes *similar* to one another even if not competitors, which makes a restriction of this sort suspect. But the restrictive covenants here aren't nearly so broad. Lunsford and Old JBL agreed not to engage "in the Business" itself, (APA § 12.3(a)(i); Consulting Agrmt. § 8(a)(i)), which even Osprey agrees is confined to Old JBL's former business, (*see* Br. in Supp. 2–3). The covenants also bar other activities but only if they are "directly competitive." (APA § 12.3(a)(i); Consulting Agrmt. § 8(a)(i).) These restrictions are not facially unreasonable. *See Jewel Box Stores*, 272 N.C. at 660–61, 663, 158 S.E.2d at 841, 843 (enforcing a noncompete covenant that proscribed the seller from participating in "any retail jewelry business, or any business in competition with purchaser").

19. The second argument is a closer case. The covenants forbid Lunsford and Old JBL from "directly or indirectly" competing against New JBL, including indirectly owning an interest in companies "in the Business." (APA § 12.3(a), (a)(i); Consulting Agrmt. § 8(a), (a)(i).) Osprey observes, and New JBL does not deny, that this language is broad enough to prohibit holding an interest in a competing business through a mutual fund. (*See* Br. in Supp. 9–10.) Although this language pushes the boundaries of what is reasonably necessary to protect New JBL's interests, it does not, standing alone, render the covenants overbroad and unenforceable.

20.     Again, Osprey's favored cases come from the employment context. And again, the contract in each of those cases barred an employee from participating in businesses "similar to" his or her employer's business. For good reason, the courts held that the employer had no legitimate interest in keeping the employee from owning a mutual fund that invested in a similar but not competitive company. "Such vast restrictions on [an employee] cannot be enforced." *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 509, 606 S.E.2d 359, 362–63 (2004) (refusing to enforce covenant that prohibited an employee from "holding interest in a mutual fund invested in part in a firm engaged in business *similar to*" the former employer (emphasis added)); *see also RLM Commc'ns*, 831 F.3d at 197; *Horner Int'l Co. v. McKoy*, 232 N.C. App. 559, 565, 754 S.E.2d 852, 857 (2014).

21.     This reasoning is a poor fit here. As noted, the covenants at issue are narrower. They forbid Lunsford and Old JBL from participating in "the Business" itself and in other directly competitive activities, not in similar businesses. Also, the covenants arise from the sale of a business, not an employment relationship. As our appellate courts have observed, the buyer of a business may have legitimate interests warranting protection that an employer would not have. *See Jewell Box Stores*, 272 N.C. at 663, 158 S.E.2d at 843 (reasoning that the sale of a business involves not just the sale of tangible assets but also the sale of goodwill); *see also Outdoor Lighting Perspectives Franchising, Inc. v. Harders*, 228 N.C. App. 613, 620, 747 S.E.2d 256, 262 (2013) ("[N]on-competition agreements contained in an employment contract are

more closely scrutinized than those contained in a contract for the sale of a business." (citation and quotation marks omitted)).

22. Indeed, our Supreme Court has often enforced noncompete covenants of similar breadth when they arise from the sale of a business. Consider the covenant at issue in *Bicycle Transit Authority, Inc. v. Bell*, 314 N.C. 219, 333 S.E.2d 299 (1985). There, the sellers agreed that they would not "directly or indirectly . . . own, . . . or be connected in any manner with, any business which is a competitor of the" buyer. *Id.* at 221, 333 S.E.2d at 301. The Supreme Court construed that language as "a very general restriction on the defendants with respect to any acts which would promote competition." *Id.* at 229, 333 S.E.2d at 305. Noting that the parties had agreed the covenant "is absolutely necessary to the successful acquisition of the business," the Court concluded that it "is not overbroad and is reasonably necessary to protect plaintiff's interests." *Id.* at 226 & n.5, 333 S.E.2d at 304 & n.5.

23. Other cases follow suit. *See, e.g.*, *Jewel Box Stores*, 272 N.C. at 660–61, 663 158 S.E.2d at 841, 843 (upholding a covenant in which the seller agreed "that he will not directly or indirectly own, . . . or be connected in any manner as officer, stockholder, employee, partner or otherwise [with], . . . any retail jewelry business, or any business in competition with purchaser"). And long ago, the Supreme Court stressed that it has "uniformly held . . . that a restrictive covenant, contained in a contract for the sale of a business, including the good-will of the vendor, . . . by which the vendor agrees not to enter into competition, *directly or indirectly*, with the vendee,

in the conduct of said business is valid." *Moskin Brothers, Inc. v. Swartzberg*, 199 N.C. 539, 543–44, 155 S.E. 154, 157 (1930) (emphasis added).

24. In light of these precedents, the Court concludes that the covenants at issue are not facially overbroad. As alleged, Lunsford spent more than twenty years developing Old JBL's business and cultivating relationships with customers and industry members. (*See* Countercl. ¶ 18.) This valuable goodwill formed the basis of a multimillion-dollar transaction in which Old JBL and Lunsford received not only cash but membership rights in New JBL. (*See* Countercl. ¶¶ 15, 18–20, 24.) Both sides agreed that the restrictive covenants were "reasonable and necessary to protect the legitimate interests of [New JBL] and constitute[d] a material inducement" for the sale. (APA § 12.3(e); *see also* Consulting Agrmt. § 8(e).)

25. The Court therefore denies the motion to dismiss any claims based on the covenants not to compete. To be clear, the Court's decision is narrow. Although Osprey has not shown that the covenants in the asset purchase agreement and consulting agreement are facially unreasonable, it is free to revisit the issue after discovery and on a more developed record. *See Emrich Enters., LLC v. Hornwood, Inc.*, 2020 NCBC LEXIS 45, at *36–38 (N.C. Super. Ct. Apr. 8, 2020) (concluding that a restrictive covenant was not facially invalid and noting that consideration of reasonableness "should be made on a more fully developed record"); *Akzo Nobel Coatings, Inc. v. Rogers*, 2011 NCBC LEXIS 42, at *39, 41 (N.C. Super. Ct. Nov. 3, 2011) (denying motion for judgment on the pleadings concerning a noncompete

covenant arising from a sale of business and noting that "[t]he inquiry may be revisited on a more fully developed record").

## B. Tortious Interference Claims

26. New JBL asserts claims for tortious interference with contract and with prospective economic advantage.* The difference between the two claims is slight. The former arises when a person induces a third party "not to perform" under an existing contract. *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988) (citing *Childress v. Abeles*, 240 N.C. 667, 674, 84 S.E.2d 176, 181–82 (1954)). The latter arises when a person induces a third party "not to enter a contract with" the plaintiff when the contract would have resulted "but for the interference." *Dalton v. Camp*, 353 N.C. 647, 654, 548 S.E.2d 704, 709 (2001) (quoting *Spartan Equip. Co. v. Air Placement Equip. Co.*, 263 N.C. 549, 559, 140 S.E.2d 3, 11 (1965)). In either case, the interference is actionable only if done "without justification." *United Labs.*, 322 N.C. at 661, 370 S.E.2d at 387.

27. Osprey contends that the Court should dismiss both claims because the allegations that it acted without justification are conclusory. (*See* Br. in Supp. 13, 15.) Pointing to case law stating that a complaint must "admit of no motive for interference other than malice," Osprey contends that New JBL's "general and conclusory allegations of malice" do not support the claims. (Br. in Supp. 13 (first

---

* In its counterclaims and brief, New JBL calls the latter claim "intentional interference with prospective contractual relations." Our appellate courts have cast doubt on the very existence of a claim by that name. *See, e.g.*, *Burgess v. Busby*, 142 N.C. App. 393, 404, 544 S.E.2d 4, 10 (2001). The Court gives New JBL the benefit of the doubt and treats the claim as one for tortious interference with prospective economic advantage, which undoubtedly exists.

quoting *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 605, 646 S.E.2d 826, 832–33 (2007)).)

28. As this Court has observed, "[m]alice is a concept that tends to confuse more than illuminate." *Lenders Funding, LLC v. WAIM Mgmt. Co.*, 2018 NCBC LEXIS 67, at *8 (N.C. Super. Ct. July 6, 2018). A plaintiff must plead legal malice, which is just another way of saying "the intentional doing of the harmful act without legal justification." *Childress*, 240 N.C. at 675, 84 S.E.2d at 182; *see also Charah, LLC v. Sequoia Servs., LLC*, 2020 NCBC LEXIS 52, at *14–15 (N.C. Super. Ct. Apr. 17, 2020). This is not a toothless requirement: complaints sometimes defeat themselves by alleging facts that "reveal[] that the interference was justified or privileged." *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 220, 367 S.E.2d 647, 650 (1988). But "it is not necessary 'to allege and prove actual malice in the sense of personal hatred, ill will, or spite.'" *Lenders Funding*, 2018 NCBC LEXIS 67, at *8 (quoting *Childress*, 240 N.C. at 675, 84 S.E.2d at 182).

29. Here, New JBL alleges that Osprey—whose president is Lunsford—knew about the asset purchase agreement, the consulting agreement, and their restrictive covenants. (*See* Countercl. ¶¶ 60, 120.) Even so, Osprey went on to compete against New JBL, solicited New JBL's customers, and then tried to conceal its actions. (*See* Countercl. ¶¶ 33, 35.) These efforts, New JBL alleges, were not honest competition but instead part of a broad-based conspiracy to undermine its business "by taking documents and business information" as well as "poaching employees and customers." (Countercl. ¶ 30; *see also* Countercl. ¶ 32.) Finally, New JBL alleges that

Osprey and the other conspirators did these things "intentionally, maliciously, willfully and wantonly" and "without justification." (Countercl. ¶¶ 122, 123.)

30. These allegations are neither boilerplate nor conclusory. Taking them as true, the counterclaims adequately allege that Osprey and the other conspirators acted without justification. *See, e.g.*, *Sandhills Home Care, L.L.C. v. Companion Home Care – Unimed, Inc.*, 2016 NCBC LEXIS 61, at \*47–48 (N.C. Super. Ct. Aug. 1, 2016) ("Although the distinction between seeking to destroy a competitor and a lawful competitive interest may be blurry, the Court believes Plaintiff's allegation of a specific plan or scheme to destroy Plaintiff's business goes beyond reasonable competitive behavior.").

31. As to the claim for tortious interference with prospective economic advantage, Osprey also argues that New JBL failed to identify a specific contract that would have resulted without the alleged interference. (*See* Br. in Supp. 14.) "The mere expectation of future contracts with potential customers is insufficient to state a claim." *Sec. Camera Warehouse, Inc. v. Bowman*, 2017 NCBC LEXIS 39, at \*22 (N.C. Super. Ct. May 1, 2017) (citation and quotation marks omitted). But New JBL identifies three customers by name and alleges that it would have obtained contracts with each but for the acts of Osprey and the other conspirators. (Countercl. ¶¶ 127, 129.) These allegations are enough to state a claim. *See Se. Anesthesiology Consultants, PLLC v. Rose*, 2019 NCBC LEXIS 52, at \*36–37 (N.C. Super. Ct. Aug. 20, 2019) (concluding that plaintiff adequately alleged that it had a reasonable probability of entering into contracts with specific individuals); *Velocity Sols., Inc. v.*

*BSG, LLC*, 2016 NCBC LEXIS 19, at *13 (N.C. Super. Ct. Feb. 22, 2016) (denying motion to dismiss even though plaintiffs did not identify a "specific contractual opportunity").

### C. Unfair or Deceptive Trade Practices

32.    Osprey argues that the claim for unfair or deceptive trade practices is derivative of New JBL's other claims and therefore should be dismissed for the same reasons. (*See* Br. in Supp. 18–19; Reply Br. 12, ECF No. 92.) Having found no reason to dismiss the contract and tortious interference claims, the Court also denies the motion to dismiss the claim for unfair or deceptive trade practices.

### D. Civil Conspiracy

33.    Civil conspiracy comprises three elements: (1) a conspiracy; (2) wrongful actions taken by at least one of the conspirators in furtherance of that conspiracy; and (3) injury to the plaintiff as a result. *See Krawiec v. Manly*, 370 N.C. 602, 614, 811 S.E.2d 542, 550–51 (2018). A conspiracy requires an agreement between at least two persons to take an unlawful action or to take a lawful action in an unlawful manner. *See id.* at 613, 811 S.E.2d at 550; *Evans v. Star GMC Sales & Serv., Inc.*, 268 N.C. 544, 546, 151 S.E.2d 69, 71 (1966).

34.    Osprey argues that the counterclaims do not adequately allege the existence of an agreement. (*See* Br. in Supp. 15–18.) The Court disagrees. As alleged, Osprey agreed with the other counterclaim defendants to breach the various contracts at issue, steal documents and business information from New JBL, and undermine its business. (*See* Countercl. ¶ 135.) Alone, that might seem conclusory, but New JBL

also alleges that Lunsford recruited Osprey to the conspiracy, the same person formed Osprey and the other conspiring entities, Osprey moved into office space with those entities, and Osprey had knowledge of the contracts. (*See* Countercl. ¶¶ 30, 31, 39, 60, 77, 120.)

35. Taking these allegations as true, New JBL has set forth not only that Osprey entered into an agreement but also roughly when the agreement happened, how it arose, and its purpose. The Court therefore denies the motion to dismiss the conspiracy claim. *See, e.g.*, *Lau v. Constable*, 2017 NCBC LEXIS 10, at *22–23 (N.C. Super. Ct. Feb. 7, 2017) (denying motion to dismiss when the complaint alleged defendant "was aware of and complicit in" wrongdoing); *Loftin v. QA Invs. LLC*, 2015 NCBC LEXIS 44, at *14–15 (N.C. Super. Ct. Apr. 30, 2015) (same); *Veer Right Mgmt. Grp., Inc. v. Czarnowski Display Serv., Inc.*, 2015 NCBC LEXIS 13, at *9–11 (N.C. Super. Ct. Feb. 4, 2015) (same).

## IV.
## CONCLUSION

36. For all these reasons, the Court **DENIES** Osprey's motion to dismiss.

**SO ORDERED**, this the 28th day of September, 2020.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
for Complex Business Cases